UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH PYLES, individually and on behalf of others similarly situated, | )<br>)<br>) |
| Plaintiff, | )  Case No.: 2:20-cv-5755 |
| v. | )  JURY DEMAND |
| AMGUARD INSURANCE COMPANY, | )<br>)<br>) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, Elizabeth Pyles ("Pyles" or "Plaintiff")), individually and on behalf of others similarly situated, and for her Complaint against AmGUARD Insurance Company ("AmGUARD" or "Defendant")), states and alleges the following:

### PARTIES, RESIDENCY, JURISDICTION AND VENUE

1. Pyles is a resident of Pickaway County, Ashville, Ohio.

2. Defendant is organized under the laws of the State of Pennsylvania with its principle place of business in Wilkes-Barre, Pennsylvania.

3. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings contractual and declaratory relief claims on behalf of herself and a putative class of Defendant's property insurance policyholders who are similarly situated.

4. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2). There are more than 100 members in the proposed class and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Defendant.

6. Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

### A. The Property Insurance Policies and Casualty Losses

7. Defendant sells property insurance coverage for, *inter alia*, homes and buildings in Arizona, Arkansas, California, Illinois, Kentucky, Louisiana, Maryland, Mississippi, Ohio, South Carolina, Tennessee, Utah, Virginia, and Wisconsin.

8. This lawsuit only concerns property coverage for buildings and structures, and not personal contents, such as furniture and clothes.

9. Further, this lawsuit only concerns claims wherein Defendant itself accepted coverage and then Defendant chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology.

10. Pyles contracted with AmGUARD for an insurance policy providing coverage for certain losses to her house located at 247 Powell Street, Ashville, Ohio (the "Insured Property"). The policy number was ELHO030986 (the "Policy"). The Policy was effective from October 22, 2019 to October 22, 2020.

11. Pyles paid AmGUARD premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

12. During the policy period, the Insured Property suffered damage covered by the Policy. The damage to the Insured Property required replacement and/or repair.

13. Pyles timely submitted a claim to AmGUARD requesting payment for the covered loss.

14. AmGUARD determined the loss to the Insured Property was covered by the terms of the Policy.

15. AmGUARD calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then AmGUARD subtracts the estimated depreciation.

16. The Policy, and the other property forms at issue in this pleading, do not permit the withholding of labor as depreciation as described below. In contrast with the Policy, certain policies of insurance expressly allow for the depreciation of "labor" as described herein. The type of form or endorsement will be referred to herein as a "labor depreciation permissive form." The Policy does not contain a labor depreciation permissive form.

17. AmGUARD calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then AmGUARD subtracts the estimated depreciation.

**B. Defendant's Calculation of Plaintiff's ACV Payments**

18. In adjusting Pyles' claim, AmGUARD affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate each respective loss and to make its respective ACV payments. Defendant did not use any other methodology to calculate Plaintiff's ACV payment.

19. Soon after the loss, AmGUARD sent an adjuster to inspect the damage and estimate the ACV. AmGUARD uses commercially-available computer software to estimate RCV,

depreciation, and ACV. The software used to calculate the payment to the Plaintiff is called Xactimate®.

20. As set forth in a written Xactimate® estimate provided to Pyles and dated June 15, 2020, AmGUARD's adjuster determined that Pyles had suffered a covered loss in the amount of $13,298.40 (the RCV) to her property. The estimate included the cost of materials and labor required to complete the repairs.

21. In calculating its ACV payment obligations to Pyles, AmGUARD subtracted from the RCV estimate $6,446.25 for depreciation. This resulted in an ACV of $6,852.15. Pyles was underpaid on her ACV claim as more fully described below.

### C. Defendant's Practice Of Withholding Labor As Depreciation

22. When it calculated Plaintiff's ACV benefits owed under the Policy, Defendant withheld costs for both the materials and labor required to repair or replace buildings and structures as depreciation, even though labor does not depreciate in value over time. Defendant withheld labor costs throughout its ACV calculations as depreciation.

23. Like all property insurance claims estimating software, the specific commercial claims estimating software used by AmGUARD allows for the depreciation of materials only or the depreciation of both material and labor in its depreciation option setting preferences.

24. In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and contractors/laborers' overhead and profit necessary to restore property to its condition *status quo ante*, as well as removal costs to remove damaged property, under commercial claims estimating software.

25. AmGUARD's withholding of labor costs as depreciation associated with the repair or replacement of Plaintiff's property resulted in Plaintiff receiving payment for her loss in an amount less than she was entitled to receive. AmGUARD breached its obligations under the Policy by improperly withholding the cost of labor as depreciation.

26. Plaintiff herself cannot determine the precise amount of labor that has been withheld based only upon the written estimate provided. To determine the precise amount of labor withheld, it is necessary to have access to the commercial property estimating program at issue (Xactimate®), as well as the electronic file associated with the estimate.

27. While a property insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold repair labor as depreciation under the policy forms at issue when the carrier chooses to use a replacement cost less depreciation methodology.

28. Defendant's failure to pay the full cost of the labor necessary to return the Insured Premises to the *status quo ante* left Plaintiff under-indemnified and underpaid for her loss.

29. Plaintiff disputes whether portions of the labor, as determined by Defendant itself, may be withheld by Defendant as "depreciation" from Defendant's ACV payment under the terms and conditions of the Policy.

30. Defendant materially breached its duty to indemnify Plaintiff by withholding labor costs from her ACV payment as depreciation, thereby paying less than Plaintiff was entitled to receive under the terms of the Policy, including but not limited to depriving Plaintiff of the time use of money resulting from the time periods of labor withholdings in the form of prejudgment interest.

**AMOUNT IN CONTROVERSY**

31. Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

32. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit as a class action on behalf of herself and on behalf of others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

33. The proposed class that Plaintiff seeks to represent is tentatively defined as follows:

All AmGUARD policyholders (or their lawful assignees) who made: (1) a structural damage claim for property located in Arizona, Arkansas, California, Illinois, Kentucky, Louisiana, Maryland, Mississippi, Ohio, South Carolina, Tennessee, Utah, Virginia and Wisconsin ; and (2) for which AmGUARD accepted coverage and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and (3) which resulted in an actual cash value payment during the class period from which non-material depreciation was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible, for the maximum limitations period as may be allowed by law and arguments of counsel.

In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or similar depreciation option settings in competing commercial software programs.

The class excludes any claims for which the applicable limits of insurance was exhausted by the initial actual cash value payment.

The class also excludes any claims arising under labor depreciation permissive policy forms, *i.e.*, those forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form, unless the use of those forms are not permitted.

34. Plaintiff reserves the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

35. Plaintiff and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies, if any. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

36. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds or thousands of people geographically dispersed in Arizona, Arkansas, California, Illinois, Kentucky, Louisiana, Maryland, Mississippi, Ohio, South Carolina, Tennessee, Utah, Virginia and Wisconsin have been damaged by Defendant's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Defendant or from information readily available to Defendant.

37. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

38. Defendant has acted on grounds generally applicable to the proposed class in that Defendant has routinely withheld labor costs as described herein in its adjustment of property

damage claims under its policies of insurance. It is reasonable to expect that Defendant will continue to withhold labor to reduce the amount it pays to its insureds under these policies absent this lawsuit.

39. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a. Whether Defendant's policy forms allow the withholding of labor costs in the calculation of ACV payments under the replacement cost less depreciation methodology;

   b. Whether Defendant's policy language is ambiguous;

   c. Whether Defendant's withholding of labor costs in the calculation of ACV payments breaches the Defendant's insurance policy forms;

   d. Whether Defendant has a custom and practice of withholding labor costs in the calculation of ACV payments;

   e. Whether Plaintiff and members of the proposed class have been damaged as a result of Defendant's withholding of labor costs in the calculation of ACV payments owed; and

   f. Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

40. Plaintiff's claim is typical of the claims of the proposed class members, as they are all similarly affected by Defendant's customs and practices concerning the withholding of labor. Further, Plaintiff's claim is typical of the claims of the proposed class members because Plaintiff's claim arose from the same practices and course of conduct that give rise to the claims of the

members of the proposed class and is based on the same factual and legal theories. Plaintiff is not different in any material respect from any other member of the proposed class.

41. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class she seeks to represent. Plaintiff has retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiff reserves the right to have unnamed class members join them in seeking to be a class representative.

42. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

43. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary

adjudication with consistent results and equal protection of the rights of Plaintiff and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

44. Questions of law or fact common to Plaintiff and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by Defendant's unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

45. Class certification is further warranted because Defendant has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

46. Plaintiff may seek, in the alternative, certification of issues classes.

47. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

**COUNT I - BREACH OF CONTRACT**

48. Plaintiff restates and incorporates by reference all preceding allegations.

49. Defendant entered into policies of insurance with Plaintiff and members of the proposed class. These insurance policies govern the relationship between Defendant and Plaintiff, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

50. These policies of insurance are binding contracts under Arizona, Arkansas, California, Illinois, Kentucky, Louisiana, Maryland, Mississippi, Ohio, South Carolina, Tennessee, Utah, Virginia and Wisconsin law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

51. Defendant drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV payments for structural loss when Defendant is calculating ACV under a replacement cost less depreciation methodology.

52. In order to receive or be eligible to receive ACV claim payments in the first instance, Plaintiff and the putative class members complied with all material provisions and performed all of their respective duties with regard to their insurance policy.

53. Defendant breached its respective contractual duties to pay Plaintiff and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

54. Additionally, Defendant's actions in breaching its contractual obligations to Plaintiff and members of the proposed class benefitted and continue to benefit Defendant. Likewise, Defendant's actions damaged and continue to damage Plaintiff and members of the proposed class.

55. Defendant's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and members of the proposed class.

56. In light of the foregoing, Plaintiff and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts unlawfully withheld from their ACV payments, including prejudgment interest as may be allowed by law.

### COUNT II - DECLARATORY JUDGMENT AND RELIEF

57. Plaintiff restates and incorporates by reference all preceding allegations.

58. This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

59. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

60. Plaintiff and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

61. Plaintiff seeks, individually and on behalf of the proposed class, a declaration that Defendant's property insurance contracts prohibit the withholding of labor costs as described herein when adjusting losses under the methodology employed herein.

62. Plaintiff further seeks, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

63. Plaintiff and members of the proposed class have and will continue to suffer injuries.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Enter an order certifying this action as a class action, appointing Plaintiff as the representative of the class, and appointing Plaintiff's attorneys as counsel for the class;

2. Enter a declaratory judgment, declaring that Defendant's withholding of labor costs as depreciation is contrary to and breaches the insurance policy issued to Plaintiff and members of the class;

3. Enter a declaration, and any preliminary and permanent injunction and equitable relief against Defendant and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4. Enter an order that Defendant specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of their past and present practices complained of herein;

5. Award compensatory damages for all sums withheld as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiff and members of the proposed class;

6. Award compensatory damages to Plaintiff for all amounts to which she is entitled;

7. Award costs, expenses, and disbursements incurred herein by Plaintiff and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

8. Pre- and Post-Judgment interest; and

9. Grant such further and additional relief as the Court deems necessary and proper.

Respectfully submitted,

*/s/ Stephen G. Whetstone*
STEPHEN G. WHETSTONE (0088666)
Email: steve@whetstonelegal.com
**Whetstone Legal, LLC**
P.O. Box 6, 2 N. Main Street, Unit 2
Thornville, Ohio 43076
Telephone: 740-785-7730
Facsimile:  740-205-8898

and

ERIK D. PETERSON (KY Bar 93003)*
**Mehr, Fairbanks & Peterson**
 **Trial Lawyers, PLLC**
201 West Short Street, Suite 800
Lexington, Kentucky 40507
Telephone:  859-225-3731
Facsimile:  859-225-3830
Email: edp@austinmehr.com

J. BRANDON McWHERTER
(TN Bar # 21600)*
**McWherter Scott Bobbitt PLC**
341 Cool Springs Blvd., Suite 230
Franklin, TN  37067
(615) 354-1144
brandon@msb.law

T. JOSEPH SNODGRASS
 (MN Bar #231071)*
Larson • King, LLP
30 E. 7th Street, Suite 2800
St. Paul, MN 55101
(651) 312-6500
jsnodgrass@larsonking.com

*Attorneys for Plaintiff and*
*Putative Class Representative*

**\*to be admitted** *pro hac vice*